## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) BRANDON WICHERT | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | CIV-21-976-D |
| | ) | Judge Timothy DeGiusti |
| (2) OHIO SECURITY | ) | |
| INSURANCE COMPANY, an | ) | |
| affiliate or subsidiary of LIBERTY | ) | |
| MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant(s). | ) | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff pursuant to Fed. R. Civ. P. 56 moves the Court for an order granting plaintiff partial summary judgment, specifically holding that defendant's position that Missouri law allowed the defendant to offset payments received by the plaintiff from his employer's workers' compensation carrier is incorrect and unreasonable as a matter of law based on the insurance policy and both Missouri law and Oklahoma law. In support of plaintiff's motion plaintiff advises the court as follows:

## TABLE OF AUTHORITIES

Page(s)

Cases

*13-CV-242-TDD,*
  *2015 WL 4755836 (E.D. Okla. Aug. 11, 2015)* ........................................... 16, 17
Adams v. Turner,
  238 F.Supp. 643 (D.D.C.1965) ....................................................................... 26
*Adler,*
  144 F.3d .......................................................................................................... 15
*Aetna Cas. & Sur. Co. v. Haas,*

422 S.W.2d 316 (Mo. banc 1968) ................................................................. 27

*Aetna v. State Bd. for Property and Cas. Rates,*
1981 OK 153, 637 P.2d 1251 .......................................................... 18, 25

Aldcroft v. Fidelity & Casualty Co. of New York,
106 R.I. 311, 259 A.2d 408 (1969)....................................................... 26

*Am. Standard Ins. Co. of Wisconsin v. Forsythe,*
*915 F.2d 1212 (8th Cir. 1990)*........................................................... 23

Babcock v. Adkins,
695 P.2d 1340 (Okla.1984)......................................................... 21, 22

*Bill Hodges Truck Co. v. Humphrey,*
1984 OK CIV APP 55, 704 P.2d 94 ......................................... 18, 25, 27

*Blumer v. Auto. Club Inter-Ins. Exch.,*
*340 S.W.3d 214 (Mo. Ct. App. 2011)*................................................. 27

*Brock v. Dunne,*
*SC 97542, 2021 WL 5217031 (Mo. Nov. 9, 2021)*............................... 23

Burch v. Allstate Ins. Co.,
1998 OK 129, 977 P.2d 1057, as corrected................................. 18, 25

*Burns v. Smith,*
*303 S.W.3d 505 (Mo. 2010)*................................................................ 27

*Buzzard v. Farmers Ins. Co., Inc.,*
*1991 OK 127, 824 P.2d 1105* ........................................................ 14, 17

Cameron Mutual Insurance Company v. Madden,
533 S.W.2d 538 (Mo.1976)................................................... 22, 23, 26

*Cano v. Travelers Ins. Co.,*
*656 S.W.2d 266 (Mo. 1983)*................................................................ 23

Celotex,
477 U.S., 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1) ...................... 15, 19

*Chambers v. Walker,*
1982 OK 128, 653 P.2d 931 ......................................................... 18, 25

Christian v. Am. Home Assurance Co.,
1977 OK 141, 577 P.2d 899 ................................................................ 16

Crossman v. Yacubovich,
290 S.W.3d 775 (Mo.App.2009) ......................................................... 27

DeWitt v. American Family Mutual Ins. Co.,
667 S.W.2d 700 (Mo. banc 1984) ....................................................... 19

*Dodson v. St. Paul Ins. Co.,*
*1991 OK 24, 812 P.2d 372* .................................................................. 27

*Doshay v. Glob. Credit Collection Corp.,*
*796 F. Supp. 2d 1301 (D. Colo. 2011)*................................................ 15

*Douthet v. State Farm Mut. Auto. Ins. Co.,*
*546 S.W.2d 156 (Mo. 1977)*.......................................................... 23, 26

*Falcone v. Liberty Mut. Ins. Co.,*
*2017 OK 11, 391 P.3d 105* .................................................................. 17

*First Bank of Turley v. Fid. & Deposit Ins. Co. of Maryland,*
   *1996 OK 105, 928 P.2d 298* .......................................................................... 16

*Franklin v. Thompson,*
   981 F.2d 1168 (10th Cir.1992) ....................................................................... 15

*Heavner v. Farmers Insurance Company,*
   663 P.2d 730 (Okla.1983) .............................................................................. 22

Kickham v. Carter,
   335 S.W.2d 83 (Mo.1960) .............................................................................. 26

*Martin v. Gray,*
   *2016 OK 114, 385 P.3d 64* ............................................................................ 16

McCorkle v. Great Alt. Ins. Co.,
   1981 OK 128, 637 P.2d 583 .......................................................................... 16

*McRaven v. F–Stop Photo Labs, Inc.,*
   660 S.W.2d 459 (Mo.App.1983) .................................................................... 27

*Midland Risk Ins. Co.,*
   *42 F.3d 607* .................................................................................................... 16

*Morris v. J.C. Penney Life Ins. Co.,*
   *895 S.W.2d 73 (Mo.App.1995)* ..................................................................... 18

*Newport v. USAA,*
   *2000 OK 59, 11 P.3d 190* .............................................................................. 17

*Phillips v. New Hampshire Ins. Co.,*
   *263 F.3d 1215 (10th Cir. 2001)* .......................................................... 14, 17, 18

*Reeder v. Am. Econ. Ins. Co.,*
   *88 F.3d 892 (10th Cir. 1996)* ................................................................... 14, 17

*Serra v. Estate of Broughton,*
   *2015 OK 82, 364 P.3d 637* ............................................................................ 27

*Shepard v. Farmers Insurance Company, Inc.,*
   678 P.2d 250 (Okla.1983) .............................................................................. 22

*Stanton v. American Mutual Liability Insurance Company,*
   747 P.2d 945 (Okla.1987) .............................................................................. 21

Stanziale v. Musick,
   370 S.W.2d 261 (Mo.1963) ............................................................................ 26

*Timmons v. Royal Globe Ins. Co.,*
   *1982 OK 97, 653 P.2d 907* ............................................................................ 16

Torres v. Kansas City Fire & Marine Ins. Co.,
   1993 OK 32, 849 P.2d 407 ............................................................................ 22

*Webb v. State Farm Mut. Auto. Ins. Co.,*
   *479 S.W.2d 148 (Mo. App. 1972)* ................................................................. 26

Statutes
*Mo. Ann. Stat. § 287.120* ................................................................................. 23
*Mo. Ann. Stat. § 375.420 (West)* ..................................................................... 19
Mo. Ann. Stat. § 379.203 (West) ........................................................... 5, 22, 23, 24

OKLA. STAT. tit. 36, § 1250.5(1) ........................................................ 16

Rules
Fed. R. Civ. P. 56 ............................................................................. 1, 15

Other Authorities
25 C.J.S. Damages s 99 (1966) ......................................................... 26
s 379........................................................................................... 26

## INTRODUCTION

Plaintiff, an Oklahoma resident, was a passenger in a vehicle operated by his coworker, Brandon Thompson also an Oklahoma resident, that was involved in an automobile accident in Tennessee on May 15, 2019. Plaintiff's treatment for the injuries he incurred, after the emergent treatment he received in Tennessee, occurred in Oklahoma and plaintiff exercised his rights under Oklahoma's workers' compensation system, i.e., filing a claim pursuant to the Administrative Workers' Compensation Act, with the Oklahoma Workers Compensation Commission. ***85A O.S. § 19.*** Plaintiff's employer's workers' compensation carrier, Argonaut Insurance Company, paid plaintiff workers compensation benefits in Oklahoma by applying Oklahoma law, and his workers' compensation case was joint petitioned (settled) on September 3, 2020 in Oklahoma.

At the time of the accident defendant insured the plaintiff's employer, Re-View Windows Inc.; the policy contained uninsured motorist coverage in the amount of $1,000,000.00.   **[Doc. No. 3-2 at pg. 9; 93-96], Exhibit "1"[1];**

---

[1]  The entire insurance policy was an exhibit [Doc. No. 3-2, pg.'s 1-128] to defendant's motion to dismiss or in the alternative motion to transfer [Doc. No. 3], and to avoid unnecessary duplication only the relevant portions of the policy [Doc. No. 3-2] referenced in plaintiff's motion are attached

**Defendant's answer [Doc. No. 12 at ¶10].** The vehicle involved in the accident was listed as a covered vehicle in the policy. [**Doc. No. 3-2 at pg. 31**], **Exhibit "2"; Defendant's answer [Doc. No. 12 at ¶10 & ¶12].** Both under Oklahoma and Missouri law plaintiff could not make a claim against his fellow employee, based on the respective states' workers' compensation laws.  Thus, plaintiff would not be entitled to payment under the liability portion of the policy for his coworker causing the accident, triggering the uninsured motorist provision of the policy.

Like Oklahoma, Missouri law requires uninsured motorist coverage unless specifically rejected.



Missouri law requires that Uninsured Motorists Coverage - Bodily Injury be provided at the state's basic financial responsibility limit of $50,000, unless you select an alternate higher limit. You may only reject Uninsured Motorists coverage for:

1. Commercial Motor Vehicles, which are defined by Missouri law as "motor vehicle [s] designed or regularly used for carrying freight and merchandise or more than eight passengers but not including vanpools or shuttles buses".

2. A fleet of five or more passenger vehicles owned by an employer.

You may also elect to carry Underinsured Motorists Coverage - Bodily Injury at a minimum limit of $50,000 or in an amount up to your policy's bodily injury liability limit. You have the option of rejecting Underinsured Motorists Coverage.

**[Doc. No. 3-2, at pg. 56]. Exhibit "3"; 36 O.S. §3636; Mo. Ann. Stat. § 379.203 (West).**

Plaintiff inquired of the workers' compensation carrier's attorney, Kristi Funck, whether the plaintiff's employer carried uninsured motorist coverage on the vehicle involved in the accident. Ms. Funck on August 10, 2020 supplied plaintiff's counsel with the name of the carrier and the name of the adjustor that Ms. Funck

_____

to plaintiff's motion as individual exhibits.

apparently notified of the claim, and advised that the workers' compensation carrier was asserting its "subrogation rights" pursuant to Oklahoma law.

Plaintiff advised defendant of his right to proceed with an uninsured motorist claim on September 30, 2020 by letter to the adjustor, Kellie Correia. Within the correspondence plaintiff cited the applicable Oklahoma law regarding his entitlement to UM benefits under the policy.   Once plaintiff concluded his workers' compensation claim he submitted a demand to the defendant on October 20, 2020. On November 2, 2020 plaintiff's counsel sent a letter to defendant inquiring as to the status of the demand. On November 20, 2020 plaintiff sent another letter to defendant inquiring of the status of the demand. Defendant did not contact the workers' compensation carrier to determine the identity of the medical providers that the carrier paid for plaintiff's treatment or attempt to gather any relevant information from the carrier as to plaintiff's workers' compensation claim until July 26, 2021, over two years after the accident and almost a year after Kristi Funck notified Liberty Mutual of plaintiff's intent to pursue a UM claim.

| | |
|---|---|
| From: | Kristi Funck <funck@lytlesoule.com> |
| Sent: | Monday, August 10, 2020 4:54 PM |
| To: | Rick Bisher |
| Subject: | FW: Brandon Wichert v. Re-View Windows |

I neglected to mention that the auto carrier is Liberty Mutual. The assigned adjuster is Kellie Correia out of the San Diego office.

-Kristi

On July 20, 2021 plaintiff's counsel again inquired as to the status of the

demand and requested the authority that defendant was relying on for the application of Missouri law that would allow defendant to offset workers' compensation benefits. Again, plaintiff supplied defendant with relevant Missouri and Oklahoma authority holding that defendant's position that it could offset workers' compensation payments (as double payments as per the policy) in its UM evaluation was incorrect. Although not requested by defendant, plaintiff's counsel also provided defendant with a HIPPA compliant authorization to release his medical records to defendant. On August 4, 2021, plaintiff again inquired if defendant had changed its position regarding offsetting workers' compensation payments. On August 6, 2021, attorney J. Mark McAllister responded to the July correspondence sent to defendant by providing excuses for the defendant's conduct, stated defendant was "currently in the process of collecting medical records", however never answered the question whether defendant was still taking the position that it could legally offset workers' compensation benefits. On August 9, 2021, plaintiff's counsel responded to Mr. McAllister's letter and advised that he appreciated his efforts in spinning the facts pertaining to defendant's claim handling conduct, but he failed to answer the question whether the defendant was still offsetting workers' compensation payments and outlined the inappropriate acts of the defendant. A courtesy copy of the petition was enclosed. On September 22, 2021, plaintiff's counsel sent another letter to McAllister, with a copy to the adjuster, requesting an evaluation of his UM claim. No response was received, and as of the date of the filing of the instant motion no evaluation of plaintiff's claim has

been communicated to plaintiff.

Plaintiff obtained service on the defendant and defendant removed the case to federal court and filed a motion to dismiss or in the alternative to transfer the case to the Western District of Missouri. **[Doc. No. 3].** The motion was fully briefed by the parties and the court issued its Order **[Doc. No. 10]** denying defendant's motion on December 3, 2021. Now, based on the undisputed facts, plaintiff moves the court to issue an order granting plaintiff partial summary judgment, specifically finding and holding that defendant's position that it could offset UM benefits plaintiff received in evaluating his uninsured motorist claim was incorrect and therefore unreasonable as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

1.    Defendant issued a policy to defendant, which insured the vehicle plaintiff was a passenger in that was involved in the Tennessee accident; UM coverage limits under the policy is $1,000.000.00. [**Doc. No. 3-2 at pg. 9; 31; 93-96], Exhibit "4"; Defendant's answer [Doc. No. 12 at ¶10 &¶12]; Exhibit "5", 8/10/20 email from Kristi Funck.**

2.    Defendant admits that plaintiff's coworker "was at fault". **Document 3, pg. 2** (excerpt below).

1.    This lawsuit arises out of a motor vehicle accident that occurred on May 15, 2019, in which Plaintiff alleges that he sustained injuries. At the time of the accident, Plaintiff was a passenger in a company car driven by his co-worker, who was at fault. *See* Doc. No. 1-2, Complaint, at ¶¶ 1-5.[1]

3.      Plaintiff was an insured under the policy.  **Document No. 3-2, pg 94,**

**Exhibit "4".**



4.      Under the underinsured motorist provision of the policy defendant is

required to pay plaintiff all sums he is entitled to recover as *compensatory*

damages from an uninsured motorist up to the UM limits. **Document 3-2, at pg.**

**94, Exhibit "6".**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**D. Limit Of Insurance**

1. Regardless of the number of "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

5.     Under the uninsured motorist provision of the policy duplicate payments are excluded for payments made by anyone who is legally responsible, however the exclusion does <u>not</u> apply to amounts paid or payable under medical payments or workers' compensation payments.  **Document 3-2, at pg. 95, Exhibit "7".**

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form attached to this Coverage Part.

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible. However, this does not include any amounts paid or payable under medical payments or any workers' compensation, disability benefits or similar law.

6.    Plaintiff filed his workers compensation claim in Oklahoma, that arose from the Tennessee accident for which the UM claim was made. **Exhibit "8", form 3; Exhibit "9", affidavit of Kristi Funck.**

7.    Plaintiff received medical treatment in Oklahoma which the workers' compensation carrier paid, along with making indemnity payments to plaintiff. **Exhibit "10", workers' comp payment ledger; Exhibit "9", affidavit of Kristi Funck.**

8.    Plaintiff resolved his workers' compensation case on September 3, 2020. **Exhibit "11", Joint Petition.**

9.    On August 10, 2020 Kristi Funk, the attorney representing the respondent and insurance carrier in the workers compensation claim sent an email advising of the identity of the UM carrier and adjustor:

| | |
|---|---|
| **From:** | Kristi Funck <funck@lytlesoule.com> |
| **Sent:** | Monday, August 10, 2020 4:54 PM |
| **To:** | Rick Bisher |
| **Subject:** | FW: Brandon Wichert v. Re-View Windows |

I neglected to mention that the auto carrier is Liberty Mutual. The assigned adjuster is Kellie Correia out of the San Diego office.

-Kristi

**Exhibit "5", 8/10/20 Kristi Funk email.**

10.    On September 29, 2020 defendant's adjustor Kellie Correia sent Charles Simons, the attorney that handled plaintiff's workers' compensation claim an email stating that UM coverage existed with limits of $1,000,000.00; Mr. Simons advised Ms. Kellie that the undersigned was handling the UM claim. **Exhibit "12", 9/29,2020 email between Simons and Correia.**

11.    The next day, September 30, 2020, Plaintiff's counsel notified defendant of the basis for his *uninsured* motorist claim and provided defendant with the applicable Oklahoma law for the claim. **Exhibit "13", 9/30/20, letter to Correia.**

12.    Plaintiff submitted a demand to the defendant on October 20, 2020. **Exhibit "14", demand letter.**

13.    On November 2, 2020, a follow up letter was sent to Correia inquiring as to the status of the demand. **Exhibit "15", 11/2/20 correspondence.**

14.    On November 20, 2020, plaintiff sent another letter to defendant inquiring of the status of the demand; there was no indication that defendant

contacted the workers' compensation carrier to determine the identity of the medical providers that the carrier paid or attempted to gather any relevant information from the carrier. **Exhibit "16", 11/20/20 correspondence; Exhibit "9", affidavit of Kristi Funck.**

15.    Defendant did not contact Kristi Funck, the workers' compensation carrier's attorney, until July 26, 2021. **Exhibit "9", affidavit of Kristi Funck.**

16.    Again, on July 20, 2021 plaintiff supplied defendant with relevant Missouri and Oklahoma authority holding that defendant's position that it could offset workers' compensation payments in its UM evaluation was incorrect; although not requested plaintiff's counsel also provided defendant with a HIPPA compliant authorization to release his medical records. **Exhibit "17", 7/20/21 correspondence.**

17.    On August 4, 2021, plaintiff again inquired if defendant had changed its position regarding offsetting workers' compensation payments. **Exhibit "18", 8/4/21 correspondence.**

19.    On August 6, 2021, attorney J. Mark McAllister sent plaintiff's counsel a letter advising that he was responding to the July correspondence sent to defendant and provided excuses for the defendant's conduct. He also advised that defendant was "currently in the process of collecting medical records", however never answered the question whether defendant was still taking the position that it could offset workers' compensation benefits. **Exhibit "19", 8/6/21 McAllister correspondence.**

20.    On August 9, 2021 plaintiff counsel responded to Mr. McAllister's letter and advised that he appreciated his efforts in spinning the facts pertaining to defendant's claim handling conduct, but once again advised that Mr. McAllister and the defendant failed to answer the question whether the defendant was still offsetting workers' compensation payments and outlined the inappropriate acts of the defendant. A courtesy copy of the petition was enclosed since there was no indication that defendant had changed its position regarding applying an offset. **Exhibit "20", 8/9/21 correspondence**; **also see Exhibit 17.**

21.    On September 22, 2021, plaintiff's counsel sent another letter to McAllister, with a copy to the adjuster, requesting an evaluation of his UM claim.[2] **Exhibit "21", 9/22/21 correspondence.**

## ARGUMENT AND AUTHORITY

### 1.  Motion for partial summary judgment standard

"A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment. *See Franklin v. Thompson,* 981 F.2d 1168, 1169 (10th Cir.1992)." ***Doshay v. Glob. Credit Collection Corp., 796 F. Supp. 2d 1301, 1303 (D. Colo. 2011).***

---

[2]  As of the date of the filing of this motion neither Mr. McAlister nor defendant have communicated an evaluation of plaintiff's UM claim as required pursuant to ***Buzzard v. Farmers Ins. Co., Inc., 1991 OK 127, 824 P.2d 1105, 1112; Reeder v. Am. Econ. Ins. Co., 88 F.3d 892, 894 (10th Cir. 1996); Phillips v. New Hampshire Ins. Co., 263 F.3d 1215, 1224 (10th Cir. 2001).***

Summary judgment is appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a matter of law. **Fed.R.Civ.P.56.** The party opposing the motion must "'set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.' *Adler,* 144 F.3d at 671. 'To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.' *Id…* Finally, the Court notes that summary judgment is not a 'disfavored procedural shortcut,' rather, it is an important procedure 'designed to secure the just, speedy, and inexpensive determination of every action.' *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1)*."* ***Doshay v. Glob. Credit Collection Corp.,*** *796 F. Supp. 2d 1301, 1303 (D. Colo. 2011)*

### 2. No offset allowed in UM claim whether carrier applies Oklahoma or Missouri law; the position taken by carrier is not supported by any legal authority and by law is unreasonable.

### A. Unreasonable conduct as a matter of law.

Although the instant motion does not seek a ruling as to the applicable law that applies to plaintiff's bad faith case, plaintiff's request for a ruling that defendant's position is unreasonable as a matter of law, warrants a short discussion of the tort of bad faith. In 1977, the Oklahoma Supreme "Court approved and adopted the rule 'that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for consequential and, in a proper case, punitive, damages may be sought.' <u>Christian</u>

v. Am. Home Assurance Co., 1977 OK 141, ¶25, 577 P.2d 899, 904. 'This is a distinct tort based upon an implied duty of the insurer to act in good faith and deal fairly with its insured. This duty is not consensual, it is imposed by law.' Id., ¶6, 577 P.2d at 901. A few years later, in McCorkle v. Great Alt. Ins. Co., 1981 OK 128, ¶27, 637 P.2d 583, 588, this Court reaffirmed Christian and held that it applies to all types of insurance companies." ***Martin v. Gray, 2016 OK 114, ¶ 8, 385 P.3d 64, 66.*** "The *Christian* cause of action, crafted as it is from the insured/insurer relationship, flows not so much from contract as it does from law that attaches a cluster of implied-in-law duties to the insurer/insured status." ***First Bank of Turley v. Fid. & Deposit Ins. Co. of Maryland, 1996 OK 105, 928 P.2d 298, 307.***

Further, an insurer doing business in Oklahoma is deemed to have knowledge of the applicable Oklahoma laws. ***Lewis v. Midland Risk Ins. Co., 42 F.3d 607, 612; See also Timmons v. Royal Globe Ins. Co., 1982 OK 97, 653 P.2d 907,913, 914***. "Oklahoma law requires an insurer to advise an insured who is making a claim about pertinent coverages that might apply under the policy and assist the insured in making the claim. *See,* OKLA. STAT. tit. 36, § 1250.5(1)." ***Christie v. State Farm Mut. Auto. Ins. Co., 13-CV-242-TDD, 2015 WL 4755836, at \*7 (E.D. Okla. Aug. 11, 2015).*** The UM carrier has a duty to perform an investigation that would keep it abreast of the insured's claim so that it can satisfy its contractual obligations promptly. **Id.** "..[T]he insurer must go about the business of investigating and evaluating the claim. An insurer is readily equipped to make such a determination, and to assign a dollar value to the claim. Once this is

accomplished, if the insurer determines that the claim does not exceed liability limits, and such valuation is supported by reasonable evidence, the underinsurer may delay payment. However, if the underinsurer does not conduct an investigation, or after investigation, determines that the likely worth of the claim exceeds the liability limits, prompt payment must be offered." ***Buzzard v. Farmers Ins. Co., Inc., 1991 OK 127, 824 P.2d 1105, 1112.*** "*Buzzard* imposes a duty upon an underinsurer to investigate and evaluate claims and offer payment if the claim so warrants." ***Reeder v. Am. Econ. Ins. Co., 88 F.3d 892, 894 (10th Cir. 1996); Phillips v. New Hampshire Ins. Co., 263 F.3d 1215, 1224 (10th Cir. 2001)***("The UM/UIM insurer must take prompt action to determine what payment is due if the insured's damages exceed the liability coverage available under the tort-feasor's policy. *See Buzzard,* 824 P.2d at 1112."). The same premise applies to uninsured motorist coverage, prompt payment is owed.

The duty of good faith and fair dealing prevents an insurer from offering less than what its own investigation reveals to be the claim's value." ***Newport v. USAA, 2000 OK 59, ¶ 16, 11 P.3d 190, 197, as corrected*** *(Aug. 1, 2000).* "*Offers below the insurer's own calculation of the value of the claim are not a valid justification for withholding payment." **Id.** Failing to pay the insured's medical expenses as part of the insured's compensatory damages under the UM policy is bad faith. ***Falcone v. Liberty Mut. Ins. Co., 2017 OK 11, ¶ 10, 391 P.3d 105, 107.*** Whether the carrier has a right of subrogation is of no consequence to the duty owed to the insured to promptly pay UM benefits; "*b*eing legally able to exercise subrogation rights is not

the *sine qua non* of an obligation to pay a UM/UIM claim." ***Phillips v. New Hampshire Ins. Co., 263 F.3d 1215, 1222 (10th Cir. 2001).*** That concern, along with the concern that the employee would receive a double recovery because of no right of subrogation has been eliminated in Oklahoma since the "employer or carrier" may maintain a right of recovery against the employer's UM carrier. ***85A O.S. §43(B)(4).*** The Oklahoma Supreme Court has refused to permit a UM carrier to set-off payments received by an insured person from collateral sources. **See *Aetna v. State Bd. for Property and Cas. Rates,* 1981 OK 153, 637 P.2d 1251 (medical payments insurance cannot be set-off against UM coverage); *Chambers v. Walker,* 1982 OK 128, 653 P.2d 931 (workers' compensation benefits cannot be used to reduce the mandatory UM coverage limits); *Bill Hodges Truck Co. v. Humphrey,* 1984 OK CIV APP 55, 704 P.2d 94 (workers' compensation benefits may not be reduced by uninsured motorist insurance proceeds). All cited in Ft. Note 38, Burch v. Allstate Ins. Co., 1998 OK 129, 977 P.2d 1057, 1065, as corrected (Jan. 5, 1999).**

In Missouri "[w]hen there is 'evidence that an insurer's bad faith efforts have hindered a legitimate insurance claim, the action for vexatious refusal should be submitted to the jury.'" ***Morris v. J.C. Penney Life Ins. Co., 895 S.W.2d 73, 79 (Mo.App.1995).*** "[D]irect and specific evidence of vexatious refusal is not required and 'the jury may find vexatious delay upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the

case.' *DeWitt v. American Family Mutual Ins. Co.,* 667 S.W.2d 700, 710 (Mo. banc 1984)." **Id. at 458**. "In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss **without reasonable cause or excuse**, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict." *Mo. Ann. Stat. § 375.420 (West).*

Although defendant was provided Oklahoma and Missouri case law on several occasions educating the defendant that its position that it could exclude (off set) payments plaintiff received from the workers' compensation carrier in evaluating his UM claim was inappropriate, defendant never advised that it was withdrawing or changing its position. The last communication regarding the issue was an email from the adjuster indicating that that 'duplicate payments" (workers' compensation payments) would be excluded (not be considered)[3], and that defendant intended to apply Missouri law. The defendant's position that workers'

---

[3]  The only payments plaintiff received was payments from the workers' compensation carrier, thus the defendant could only be referring to those payments as "duplicate payments".

compensation payments can be excluded as a duplicate payment is not only contrary to law but the policy language. See below and ¶5 under heading "Undisputed Facts".

As you know from a review of the policy we previously sent you duplicate payments are excluded under this policy. In order to assess what damages are compensable under this underinsured motorist claim, we request the following additional documentation:

- Itemized Payment Ledger reflecting amounts paid under the workers' compensation and/or disability claims
- Confirmation that Brandon Wichert has finalized his workers' compensation and/or disability claims
- Any reports or medical records made available for consideration under the workers' compensation and/or disability claims
- Any depositions taken for the workers' compensation and/or disability claims

We noted that you appear to be applying Oklahoma state laws to your analysis in your demand letter. Please note that the loss occurred in Tennessee, where the statute of limitations has already lapsed. However, I show that this is a Missouri policy for a Missouri insured, so Missouri would be the appropriate venue to address in this matter. As such, once we have the missing supports we intend to evaluate this claim under the interpretation of applicable Missouri law and the contractual language in the insurance policy. Should you have any questions or comments, please feel free to reach out. I look forward to working with you on this matter.

The defendant's position that it can offset workers' compensation payments paid to plaintiff as "duplicate payments" is unreasonable whether one applies Oklahoma or Missouri law, and the court should so hold.

### B. Application of Missouri or Oklahoma law renders the same result

It is undisputed that the coworker driver caused the accident. Both he and the coworker are insureds under the policy. As a matter of law and policy language Plaintiff cannot maintain a claim against his coworker (collect under the liability policy), therefore the negligent co-worker is uninsured, and plaintiff is entitled to uninsured motorist benefits if there is a policy that provides such coverage, which there is. Missouri law and Oklahoma law prevent the UM carrier from discounting or offsetting a plaintiff's UM evaluation/payment for the amount plaintiff was paid in his workers' compensation claim.

1. **Oklahoma law**

The Oklahoma Supreme Court 38 years ago addressed the right of an injured worker to collect uninsured motorist benefits when the vehicular accident was caused by a co-worker.

> Appellant seeks to distinguish *Barfield* on the basis that here we are dealing with an insurance policy purchased and paid for by the employer and, thus, the decedent is only a Class 2 insured by virtue of his occupancy of the vehicle, rather than a Class 1 named insured as involved in *Barfield.* Appellant insists in the situation of a Class 2 insured the term legally entitled to recover damages should be given a more restrictive meaning than in *Barfield* such that the insured be required to prove more than fault on the part of the tortfeasor giving rise to damages and the extent of those damages. It argues instead the insured must actually show damages would be recoverable in a direct action against the tortfeasor, something which cannot be shown here because of the immunity provided to the co-employee by the exclusivity of the workers' compensation laws. Appellant also notes we have recognized distinctions between Class 1 and Class 2 insureds in our stacking cases [*See e.g., Babcock v. Adkins,* 695 P.2d 1340 (Okla.1984); *Stanton v. American Mutual Liability Insurance Company,* 747 P.2d 945 (Okla.1987) ] and argues a similar distinction should be made here in the treatment of Class 1 and Class 2 insureds. **We do not agree**.
> Assuming for the purposes of this opinion decedent was a Class 2 insured under the UM endorsement[5] and, thus, an insured merely by virtue of his occupancy in a covered vehicle we fail to see how such fact necessitates a different meaning be given to the phrase legally entitled to recover damages than that espoused in *Uptegraft, Karlson* and *Barfield.* The important and overriding determination in our view is whether the party attempting to recover under the UM endorsement is an insured under the policy, a status decedent met here, as admitted by appellant. *Babcock v. Adkins,* 695 P.2d at 1342; *Shepard v. Farmers Insurance Company, Inc.,* 678 P.2d 250, 252 (Okla.1983).
>
> We likewise do not believe the fact decedent did not pay the premiums on the instant coverage should bar recovery. In our view, focusing on who paid the premium is in essence the same argument cast in a little different light than focusing on the status of the insured as Class 1 or

Class 2 for the reason most, if not all, Class 2 insureds will have paid no premium. In *Heavner v. Farmers Insurance Company,* 663 P.2d 730 (Okla.1983), we specifically rejected the view that an insured under an UM endorsement by virtue of his being a passenger in a vehicle driven by the named insured in the policy at issue should be precluded from receiving UM benefits *413 merely because he had paid no premium for the coverage. *Id.* at 731–732.

3 Appellant also asserts that if recovery is allowed in this case, it will have no subrogation rights against the negligent co-employee tortfeasor because of the immunity afforded by the workers' compensation laws, rights it says we have recognized are subject to protection. Appellant misreads our cases. <u>Torres v. Kansas City Fire & Marine Ins. Co.</u>, 1993 OK 32, 849 P.2d 407, 412–13.

Duplicate payments do not exist because the workers' compensation carrier is paid the statutory amount it is entitled to recover (payments the carrier made) from any proceeds from the employer's UM carrier, which prevents a duplicate payment to the insured. **85A O.S. §43(B)(4).**

### 2. <u>Missouri law</u>

"Missouri law requires all persons carrying liability insurance to also insure against damages arising from the negligence of uninsured motorists. *See* Mo.Rev.Stat. § 379.203. The public policy expressed in the statute bans provisions which seek to limit the amount of uninsured coverage. *Cameron Mutual Insurance Company v. Madden,* 533 S.W.2d 538, 544–45 (Mo.1976) (en banc)." ***<u>Am. Standard Ins. Co. of Wisconsin v. Forsythe</u>, 915 F.2d 1212, 1216 (8th Cir. 1990).*** An injured employee in Missouri, like an injured employee in Oklahoma, cannot recover damages from the co-worker where the co-worker's simple negligence caused the vehicular accident while in the scope and course of

his employment. **_Brock v. Dunne_, SC 97542, 2021 WL 5217031, at \*4 (Mo. Nov. 9, 2021)**("The language of section 287.120.1 unambiguously articulates the legislature's intention that co-employees have immunity from civil liability for injuries they cause on the job."); **_Mo. Ann. Stat. § 287.120_** ("Any employee of such employer shall not be liable for any injury or death for which compensation is recoverable under this chapter and every employer and employees of such employer shall be released from all other liability whatsoever, whether to the employee or any other person, except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.").

Applying Missouri law, which defendant indicated that it was doing in evaluating Brandon's claim, defendant was/is obligated to compensate him for all compensatory damages he is "legally entitled to recover", and no reduction or offset would be allowed for payments made by the workers compensation carrier. **_Cano v. Travelers Ins. Co., 656 S.W.2d 266, 270 (Mo. 1983); Douthet v. State Farm Mut. Auto. Ins. Co., 546 S.W.2d 156, 159 (Mo. 1977)_**(emphasis supplied)("The holdings in Cameron, Galloway and Webb that s 379.203 requires that coverage in the amounts required by the Safety Responsibility Law not be diminished by contractual limitation, absent express statutory authority therefor, govern the outcome of this case. It would violate the public policy expressed in s 379.203 to permit diminution of coverage by requiring credit for workmen's compensation payments. Hence, **we hold that the policy provision requiring**

**reduction of sums payable under the policy by workmen's compensation payments is void**. Such holding is consistent with the decision in Steinhaeufel v. Reliance Insurance Companies, supra.").

For 40 years Missouri precedent has been clear that defendant's position that workers' compensation payments an insured received (that defendant classified as a "duplicate payment") can be excluded from his UM evaluation is <u>incorrect</u>. Although defendant was requested to provide Missouri authority supporting its position defendant did not do so, which resulted in the instant litigation.

**3. Policy language**

The policy language states that workers' medical payment coverage and workers' compensation payments are not excluded as duplicate payments.

**Document 3-2, at pg. 95, Exhibit "7".**

> 3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form attached to this Coverage Part.
>
> We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible. However, this does not include any amounts paid or payable under medical payments or any workers' compensation, disability benefits or similar law.

The policy language recognizes that payments made under an insureds medical payments coverage and workers' compensation payments made to an insured are not duplicate payments in that the UM carrier cannot exclude such

payments as a matter of law. In Oklahoma the Oklahoma Supreme Court has refused to permit a UM carrier to set-off payments received by an insured person from collateral sources. **See** *Aetna v. State Bd. for Property and Cas. Rates,* **1981 OK 153, 637 P.2d 1251 (medical payments insurance cannot be set-off against UM coverage);** *Chambers v. Walker,* **1982 OK 128, 653 P.2d 931 (workers' compensation benefits cannot be used to reduce the mandatory UM coverage limits);** *Bill Hodges Truck Co. v. Humphrey,* **1984 OK CIV APP 55, 704 P.2d 94 (workers' compensation benefits may not be reduced by uninsured motorist insurance proceeds). All cited in Ft. Note 38,** <u>Burch v. Allstate Ins. Co.</u>**, 1998 OK 129, 977 P.2d 1057, 1065,** <u>as corrected</u> **(Jan. 5, 1999).** Missouri is in accord with Oklahoma that a UM carrier cannot offset UM payments by medical payment coverage and workers' compensation payments. *<u>Cameron Mut. Ins. Co. v. Madden</u>, 533 S.W.2d 538, 547 (Mo. 1976); <u>Webb v. State Farm Mut. Auto. Ins. Co.</u>, 479 S.W.2d 148, 153 (Mo. App. 1972); <u>Douthet v. State Farm Mut. Auto. Ins. Co.</u>, 546 S.W.2d 156, 159–60 (Mo. 1977)*("Furthermore, this last argument by defendant overlooks the fact that such a result regularly occurs when a plaintiff receives payments from a source unconnected with defendant such as hospitalization insurance. In such instances, the collateral source doctrine is applied, and the courts consistently hold that the tort-feasor has no right to benefit from such payments. Stanziale v. Musick, 370 S.W.2d 261, 267 (Mo.1963); Kickham v. Carter, 335 S.W.2d 83, 89—90 (Mo.1960); Aldcroft v. Fidelity & Casualty Co. of New York, 106 R.I. 311, 259 A.2d

408, 412 (1969); 25 C.J.S. Damages s 99 (1966). In this case, the defendant did not create or pay for and was not the source of the workmen's compensation payments received by plaintiff. If defendant company is allowed credit therefor, it receives a windfall in that its coverage is reduced despite the public policy of Missouri expressed in s 379.203. In such a situation, if there is to be a windfall, it should go to the injured person rather than to insurer. Steinhaeufel, supra; Adams v. Turner, 238 F.Supp. 643, 644—45 (D.D.C.1965)". The policy language recognizes that the specifically identified payments are not duplicate payments and therefore offsets are not permissible, contrary to defendant's position.

Even if the policy language was ambiguous or there was doubt about the meaning of the language, which is not the case, any doubt as to "exclusions exempting certain specified risks are construed strictly against the insurer." ***Dodson v. St. Paul Ins. Co., 1991 OK 24, 812 P.2d 372, 377.*** "When an insurance provision is ambiguous, words of inclusion will be construed liberally in the insured's favor, and words of exclusion will be construed strictly against the insurer." ***Serra v. Estate of Broughton, 2015 OK 82, ¶ 10, 364 P.3d 637, 641.*** "If an ambiguity exists, we construe the language of the policy against the insurer. *Id.* at 102–03. Moreover, when an insurer seeks to avoid coverage under an exclusion in the policy, the insurer has the burden of proving the applicability of the exclusion. *Id.* at 103." ***Blumer v. Auto. Club Inter-Ins. Exch., 340 S.W.3d 214, 218 (Mo. Ct. App. 2011); Burns v. Smith, 303***

*S.W.3d 505, 510 (Mo. 2010)*("Missouri also *strictly* construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies. *Aetna Cas. & Sur. Co. v. Haas,* 422 S.W.2d 316, 321 (Mo. banc 1968); *Crossman v. Yacubovich,* 290 S.W.3d 775, 779 (Mo.App.2009); *McRaven v. F–Stop Photo Labs, Inc.,* 660 S.W.2d 459, 462 (Mo.App.1983)").

## CONCLUSION

Defendant's position that it may exclude or offset workers' compensation payments made to plaintiff when determining the compensatory damages owed (legally entitled to recover) under the uninsured motorist provision of the policy is not supported by Oklahoma or Missouri law or policy language.  The defendant's position in that regard is unreasonable as a matter of law and plaintiff requests that the court granny partial summary judgment in that regard.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing and transmittal of Notice of Electronic Filing to the following:

William W. O'Connor
Margo E. Shipley
*Attorney for Defendant*


s/Rick W. Bisher