Philip D. Ryan
Rick W. Bisher *
Charles T. Simons
Tim Kent

Of Counsel:
Patrick C. Ryan

*RWB Legal Inc.



**RYAN BISHER RYAN & SIMONS**
*Attorneys at Law*
www.rbrlawfirm.com
RBRS Legal Group, PLLC
4323 N.W. 63rd Street, Suite 110
Oklahoma City, Oklahoma 73116-1513
Phone: 405.528.4567 ~ Facsimile: 405.525.2123
Toll Free: 1.800.725.2222

LIFE MEMBER
MILLION DOLLAR ADVOCATES FORUM
MULTI-MILLION DOLLAR ADVOCATES FORUM
The Top Trial Lawyers In America ™

Rick W. Bisher, Esq.
Admitted to the United States Supreme Court and
all Federal and State District Courts in Oklahoma
rbisher@rbrlawfirm.com

Legal Assistants Assigned to R. Bisher:
  Dimples Carson – dcarson@rbrlawfirm.com
  Teresa Johnson – tjohnson@rbrlawfirm.com
  Blanca Hernandez – blanca@rbrlawfirm.com

Monday, August 9, 2021

J Mark McAlester
Fenton, Fenton, Smith, Reneau & Moon
Leadership Square
211 North Robinson, Suite 800N
Oklahoma City, OK 73102

  Re: Wichert vs. Liberty Mutual

Dear Mr. McAlester:

  I hope this finds you well and thank you for your August 6, 2021, correspondence which does nothing to address the substantive response I requested from the carrier, although I certainly appreciate your efforts to spin the facts and timeline in this matter. As you should be aware the carrier adopted a position, contrary to Missouri and Oklahoma law, in "evaluating" their insured's claim. My August 4, 2021 correspondence to the carrier's representative specifically inquired as to that position, to which the carrier nor you have responded:

> *I hope this finds you well. Please advise whether your position has changed regarding discounting the uninsured motorist claim by the workers' compensation payments he received. Your immediate response is needed and appreciated.*

  The demand was presented to the carrier on October 20, 2020, with the supporting documentation for the basis of the demand. If the carrier required additional information, it certainly had the means to obtain the information without requesting that its insured or the insured's attorney conduct its investigation. The insured supplied the records forming the basis for the demand.

  Contrary to the insulation that Brandon failed to comply with a request to submit a medical authorization, the reason the carrier received the medical authorization which you indicate is being used currently, is because the insured sent it to the carrier; <u>the carrier never requested the authorization or a recorded statement from Brandon</u>. Over nine months has passed since the demand, and the carrier still has not provided a legal or factual basis for its position that it can offset workers' compensation benefits paid to Brandon in its uninsured motorist evaluation, why it never requested a medical authorization, why it never requested a recorded

Practice Areas: Personal Injury · Workers' Compensation · Social Security · Auto Accidents· Nursing Home/Medical
Negligence · Insurance Bad Faith · Product Liability · Wrongful Death · Catastrophic Injury Cases ·

EXHIBIT "20"

statement, and why it never contacted the workers' compensation carrier or its attorney to obtain information it allegedly claims it needs.

As you are most aware, contrary to the carrier's incorrect legal analysis, duplicate payments would not be made because the workers' compensation carrier is paid the statutory amount it is entitled to recover (payments the carrier made) from any proceeds from the employer's UM carrier. "The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his or her dependents, to make a claim or maintain an action in court against any third party for the injury." *85A O.S. §43*. Thus, 85A O.S. §43 allows the employee to purse a third party claim and prevents the very scenario Brandon's carrier asserts, receiving a duplicate payment.

Brandon's insurance carrier was obligated to have an understanding of the applicable law when evaluating his claim; it is obvious that was not the case. The carrier's position is contrary to the Missouri Supreme Court's decision in *Cano*: "Travelers' position on this point is defeated by *Douthet v. State Farm Mutual Automobile Insurance Co.*, 546 S.W.2d 156 (Mo. banc 1977). In *Douthet*, the uninsured motorist carrier undertook to deduct workers' compensation payments received by the plaintiff. The terms of its policy, like the one before us, provided for such a deduction. This Court held that the provision violated § 379.203 and so was invalid. 546 S.W.2d at 159–60. The deduction of the workers' compensation benefits was not permitted." *Cano v. Travelers Ins. Co., 656 S.W.2d 266, 270 (Mo. 1983).* **Missouri law the law that Brandon's insurance carrier claims should apply in this case.**

Contrary to your position that your client needed "authorization for the workers' compensation carrier" to obtain relevant documents, those records/documents are not subject to a privilege and no "authorization" would be needed by the comp carrier to provide such records, especially in light of 85 O.S. §43. I understand that the workers' compensation carrier's attorney has not received a request from your client previously and had the request been made, the records would have been provided. Even if an "authorization" was required, which is denied, your client as had 10 months to obtain the alleged authorization.

Thus, Brandon and I remain quite disappointed with the actions and nonactions of his carrier. At this time, we still have no idea whether the carrier still maintains its position as to the application of Missouri law, and if so, why it has taken a position that it can exclude payment to Brandon for injuries he received from the comp carrier. As mentioned above, that position is contrary to Oklahoma and Missouri law, and uninsured motorist payments for ALL of his damages/injuries will not, and does not, constitute a "duplicate payment". Your client has not taken Brandon's claim seriously.

Thus, to obtain the compensation that Brandon is entitled to please find enclosed a courtesy copy of the petition that is being filed today. Please advise if you can accept service. Thank you.

Respectfully,

Rick W. Bisher

RB:rb
Enclosure
Cc: Client

Practice Areas: Personal Injury · Workers' Compensation · Social Security · Auto Accidents· Nursing Home/Medical Negligence · Insurance Bad Faith · Product Liability · Wrongful Death · Catastrophic Injury Cases ·

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| NATHAN PEREZ, | ) | |
| Plaintiff(s), | ) | Case No.: |
| | ) | JUDGE: |
| v. | ) | |
| | ) | |
| PHIL-MAR, INC., d/b/a or a/k/a | ) | |
| HOWARD DRILLING COMPANY and | ) | |
| PAUL IGOU, | ) | |
| Defendant(s). | ) | |

**ORIGINAL PETITION**

Plaintiff hereby alleges and states as follows as to the above named Defendants.

1. Defendant Phil-Mar Inc., d/b/a or a/k/a Howard Drilling Company ("Howard") is a domestic for profit business corporation doing business throughout Oklahoma, Kansas, and Texas, with business offices located in Beaver, El Reno, Guymon, and Woodward Oklahoma. Its principal place of business is located in Beaver Oklahoma.

2. Defendant Paul Igou ("Igou") is, or was, an employee of Howard at the time of the incident that is at issue in this litigation.

3. Under information and belief Howard retained Igou without performing an adequate background check, or if performed, ignored the information obtained.

4. Igou has a history of criminal charges and convictions that made him a safety risk to citizens of this state, making him an at-risk employee for operating a commercial vehicle or a vehicle provided by an employer such as Howard on the roadways of this state. Howard knew, or

should have known, that Igou would use the vehicles entrusted to him by Howard in a manner that would likely cause harm to citizens of this state, such as the plaintiff.

5. Under information and belief Igou routinely allowed his dog to accompany him while performing services for Howard, including when operating vehicles provided to Igou by Howard. Howard knew, or should have known, that such activity was occurring.

6. On or about April 26, 2019 Igou, while in the course of scope of his employment, Igou was operating a vehicle entrusted to him by Howard, and stopped the vehicle on the side of a busy highway on the shoulder that did not contain an area for safe parking.





7. While using the vehicle in the course of scope of his employment, and stopping in an unsafe manner, Igou allowed his dog to exit the vehicle unattended and unleashed.

2

8. Plaintiff was operating a vehicle in a legal manner and properly loaded with steel girders in a lawful manner on the same roadway when he approached to vehicle Igou had parked.

9. The injures incurred by plaintiff arose out of the ownership, maintenance or use of a the motor vehicle owned by Howard and entrusted to Igou.

10. Igou's dog, without provocation or encouragement by the plaintiff, ran into the roadway in front of the plaintiff's vehicle, chased by Igou, requiring plaintiff to emergently brake to avoid contact with Igou. But for the actions of the dog and the individual and concurrent actions of the defendants, plaintiff would not have had to emergently brake his vehicle, that resulted in the steel girders properly loaded on his vehicle to travel into the cab of the truck causing severe injuries to the plaintiff.



### NEGLIGENT HIRING, RETENTION AND SUPERVISION

Plaintiff incorporates all previous allegations and statements and further alleges and states as follows:

11. Howard owed a duty to plaintiff and all others to refrain from hiring or retaining employees such as Igou that had/have a propensity to cause injuries to the public by his actions and non-actions in using vehicles supplied to employees by Howard.

12. Howard had a duty to supervise Igou to ensure that he acted reasonably, safely, and prudently in performing his duties, specifically while allowing Igou's dog to accompany him.

13. Howard's breach of the duty owed to plaintiff entitles plaintiff to damages.

## NEGLIGENT ENTRUSTMENT

Plaintiff incorporates all previous allegations and statements and further alleges and states as follows:

14. Oklahoma law has long recognized separate causes of action for respondeat superior and negligent entrustment, retention and hiring.

15. "An employer's liability for negligently entrusting a vehicle to an unfit employee is a separate and distinct theory of liability from that of an employer's liability under the respondeat superior doctrine." *Fox v. Mize*, 2018 OK 75, ¶ 14, 428 P.3d 314, 322, *as corrected* (Oct. 2, 2018).

16. Employers employing unfit and unqualified drivers cannot insulate themselves from a negligent entrustment claim simply by stipulating that the employee driver was acting in the course and scope of employment.

17. Howard's breach of the duty owed to plaintiff entitles plaintiff to damages.

## STATUTORY LIABILITY

4

Plaintiff incorporates all previous allegations and statements and further alleges and states as follows:

18. "The owner or owners of any dog shall be liable for damages to the full amount of any damages sustained when his dog, without provocation, bites or *injures* any person while such person is in or on a place where he has a lawful right to be." O.S. tit. 4, § 42.1 (West).

19. The actions of Igou along with the actions the unsupervised dog in the control of and owned by Igou, which Howard as aware of, caused the chain of events that produced injuries to the plaintiff.

20. The individual and concurrent actions of the defendants entitle plaintiff to damages.

**NEGLIGENCE**

Plaintiff incorporates all previous allegations and statements and further alleges and states as follows:

21. Defendant Igou had a duty to act in a manner that would not proximately cause injuries to plaintiff and all others so situated.

22. Howard is vicariously liable for the actions of Igou under the doctrine of respondeat superior.

23. The individual and concurrent actions of the defendants constitute negligence, gross negligence and a reckless disregard for the safety of the plaintiff and all others so situated.

24. The individual and concurrent actions of the defendants entitle plaintiff to damages.

## **DAMAGES**

Plaintiff incorporates all previous allegations and statements and further alleges and states as follows:

25. Plaintiff sustained serious permanent injuries which required reasonable and necessary medical treatment in excess of $440,000.00.

26. Plaintiff has incurred lost wages in excess of $15,000.00 as a result of the injuries caused by the actions of the defendants.

27. Plaintiff has incurred permanent disability, disfigurement, loss of earning capacity, endured physical and emotional pain and suffering and will continue to do so.

28. Plaintiff's damages exceed $1,000,000.00.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount that will exceed the amount required for diversity jurisdiction and all further relief that he may be entitled to in law and equity.

Respectfully submitted by:

_____
Rick W. Bisher, OBA # 12215
Ryan, Bisher, Ryan & Simons
4323 NW 63rd St. Suite 110
Oklahoma City, Oklahoma 73116
(405) 528-4567
(405) 525-2123 Facsimile
rbisher@rbrlawfirm.com
ATTORNEY FOR PLAINTIFF

ATTORNEY LIEN CLAIMED AND
JURY TRIAL DEMANDED