## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

1. BRANDON WICHERT,
       Plaintiff,

   v.

1. OHIO SECURITY INSURANCE
   COMPANY, an affiliate or subsidiary of
   LIBERTY MUTUAL INSURANCE
   COMPANY,
       Defendant.

Case No. CIV-21-976-D
Chief Judge Timothy DeGiusti

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGEMENT

Plaintiff responds to Defendant's motion:

## INTRODUCTION

Defendant's motion arises out of a controversy between a non-party, subrogated Workers' Compensation Carrier (Comp Carrier or Argonaut), Plaintiff, and Defendant. Plaintiff, an Oklahoma citizen, was badly injured while a passenger in a vehicle operated by his coworker, Brandon Thompson, also an Oklahoma citizen, in a car wreck in Tennessee on May 15, 2019. The common employer of the two, Re-View Windows Inc., was insured for Workers' Compensation by Argonaut Insurance Company and for $1 million Uninsured/underinsured Motorist (UM) by Defendant, which covered the vehicle Plaintiff occupied.

Except for emergency treatment in Tennessee, all Plaintiff's treatment was in Oklahoma, paid for by Argonaut under Oklahoma's Workers' Comp, which also paid Plaintiff Oklahoma Workers Comp benefits. His Workers' Comp case was settled by joint petition on September 3, 2020, in Oklahoma, through Oklahoma counsel.

The immediate issue before the Court is whether Oklahoma law (as Plaintiff urges) or Missouri law (as Defendant urges) should be applied. Under either Oklahoma or Missouri law Plaintiff could not make claim against his fellow employee or the employer, under either States' Workers' Comp law. Plaintiff would not be entitled to payment under the liability portion of the policy. This would trigger UM under Oklahoma but apparently not under Missouri law. Also, Missouri does not recognize first party bad faith. Thus, unsurprisingly, Defendant wants the Court to apply Missouri, rather than Oklahoma law.

Plaintiff (through his counsel, Rick Bisher, in Oklahoma) asked the comp carrier's attorney, Kristi Funck, in Oklahoma, (here, Funck) whether Plaintiff's employer had UM on the vehicle. On August 10, 2020, Funck gave Plaintiff's counsel Defendant's name and the adjustor's name (in California) that Funck apparently notified of the claim and advised that the comp carrier was asserting its "subrogation rights" pursuant to Oklahoma law.

Bisher advised Defendant of his client's right to make a UM claim on September 30, 2020, by letter to the adjustor, Kellie Correia, in California. In the letter, Plaintiff's counsel cited the applicable Oklahoma law regarding his entitlement to UM benefits. Defendant made no response.

Once Plaintiff concluded his comp claim, he submitted a demand to Defendant on October 20, 2020. Nothing happened. On November 2, 2020, Plaintiff's counsel sent a letter to Defendant asking the status of the demand. Again, nothing happened. November 20, 2020, he sent another letter to Defendant. Still, nothing happened.

Defendant did not contact the comp carrier to determine the identity of the medical providers the comp carrier paid for Plaintiff's treatment. Nor did it attempt to gather any

information from the comp carrier as to Plaintiff's comp claim until July 26, 2021, more than two years after the wreck and almost a year after Funck notified Defendant of Plaintiff's intent to pursue a UM claim.

On July 20, 2021, Plaintiff's counsel again inquired as to the status of the demand and requested the authority that Defendant was relying on for the application of Missouri law that would allow Defendant to offset workers' comp benefits. Again, Plaintiff supplied Defendant with relevant Missouri and Oklahoma authority holding that Defendant's position that it could offset workers' comp payments (as double payments as per the policy) in its UM evaluation was incorrect. Although not requested by Defendant, Plaintiff's counsel also gave Defendant an authorization to release his medical records to Defendant. On August 4, 2021, Plaintiff again inquired if Defendant had changed its position regarding offsetting comp payments. On August 6, 2021, Defendant's attorney, J. Mark McAlester (hereafter McAlester) responded to the July correspondence sent to Defendant providing excuses for Defendant's lack of response, saying Defendant was "currently in the process of collecting medical records." However, McAlester never answered the question whether Defendant was still taking the position that it could legally offset comp benefits. On September 22, 2021, Plaintiff's counsel sent another letter to McAlester, with a copy to the adjuster, requesting an evaluation of his UM claim. He got no response.

Plaintiff sued because Defendant took the position that Missouri law allowed it to discount workers' comp payments Plaintiff received as duplicate payments, not because Defendant denied his claim as Defendant argues in its motion for summary judgment.

## DEFENDANT'S STATEMENT OF UNDISPUTED FACT

1.      ¶1, admitted.

2.      ¶2, unable to admit or deny as Defendant refuses to engage in discovery.

3.      ¶3, admitted.

4.      ¶4, Plaintiff admits that under Section II, Defendant is required to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury'…to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance of use of a 'covered auto.'"

5.      ¶5, admitted.

6.      ¶6, admitted.

7.      ¶7, denied to the extent Defendant contends the policy states the legal conclusion that the policy provides UM coverage under a particular State's law which is the legal determination this Court must make under the appropriate choice of law rule.

8.      ¶8, denied as phrased. Coverage is also provided when the vehicle is uninsured where it is principally garaged: "3. 'Uninsured motor vehicle' means a motor vehicle for which no liability bond or policy at the time of an 'accident' where a covered 'auto' is principally garaged." **[Doc. No. 24-1 pg. 85].**

9.      ¶9, admitted.

10.     ¶10, admitted that is part of the definition of an "uninsured motor vehicle."

11.     ¶11-¶16, unable to admit all averments contained in the affidavit as Defendant refuses to engage in discovery – Plaintiff cannot question the affiant regarding how long and under what conditions the vehicle was garaged in Oklahoma, what audits

were conducted to verify where the vehicle was located for at least one year prior to the accident, and what affiant's definition of "principally garaged" or "temporarily located" is (Plaintiff denies that the vehicle was "temporarily" in Oklahoma, Affidavit of Brandon Wichert, Exhibit "1.")

12.    ¶17-¶19 admitted.

13.    ¶20, admitted that complaint/petition speaks for itself.

14.    ¶21 admitted that complaint/petition speaks for itself.

15.    ¶22, denied as phrased, admitted that complaint/petition speaks for itself.

16.    ¶23 admitted that complaint/petition speaks for itself and was filed of record on August 9, 2021.

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

17.    Defendant issued a business auto policy to Re-View Windows Inc**. [Doc. No. 24-1].**

18.    The policy refers to several corporations as "the complete named insured." **[Doc. No. 24-1 pgs. 22; 33].**

19.    Re-View Windows Inc., according to its social media postings, has employees (and vehicles) working on window installations in numerous states. Defendant's website shows projects in Colorado, Nebraska, New York, Mississippi, Pennsylvania, Arkansas, Wyoming, California, Tennessee, Iowa, Texas, Montana, Alabama, Ohio, Oklahoma, Utah, Idaho, Illinois, Virginia, and others. https://www.re-

view.biz/field-installation.html.[1]

20. Under the schedule of coverages and covered autos in the revised policy declarations portion of the policy, uninsured motorist coverage in the amount of $1,000,000.00 is provided for "Covered Auto Symbol(s) 06*." **[Doc. No. 24-1 pg. 9].**

21. Symbol 6 says autos principally garaged in a state that requires UM coverage as Missouri requires; Oklahoma is such a state in that UM coverage is required. **[Doc. No. 24-1 pg. 75].**

22. When the named insured is a corporation, LLC, or other organization, the insured is defined as "anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'" **[Doc. No. 24-1, pg. 94].**

23. Plaintiff was an insured under the policy. **[Doc. No. 24-1, pg. 94].**

24. Under the underinsured motorist provision of the policy Defendant is required to pay Plaintiff all sums he is entitled to recover as *compensatory* damages from an uninsured motorist up to the UM limits. **[Doc. No.24-1 pg. 94].**

25. Plaintiff filed his comp claim in Oklahoma, which arose from the Tennessee accident for which the UM claim was made. **Exhibit "2," form 3; Exhibit "3," affidavit of Kristi Funck; Exhibit "1," affidavit of Plaintiff.**

26. Plaintiff received medical treatment in Oklahoma which the workers' compensation carrier paid, along with making indemnity payments to Plaintiff. **Exhibit**

---

[1] Last viewed 4/13/22; also consistent with *re-view.biz/index.html* last viewed on same date.

**"4," workers' comp payment ledger; Exhibit "3," affidavit of Kristi Funck; Exhibit "1," affidavit of Plaintiff.**

27.     On September 30, 2020, Plaintiff's counsel notified Defendant of the basis for his *uninsured* motorist claim and provided Defendant with the applicable Oklahoma law for the claim. **Exhibit "5," 9/30/20, letter to Correia**.

28.     Plaintiff submitted a demand to Defendant on October 20, 2020. **Exhibit "6," demand letter.**

29.     On November 2, 2020, a follow up letter was sent to adjuster Correia inquiring as to the status of the demand. **Exhibit "7," 11/2/20 correspondence**.

30.     On November 20, 2020, Plaintiff sent another letter to Defendant inquiring of the status of the demand. **Exhibit "8," 11/20/20 correspondence; Exhibit "3," affidavit of Kristi Funck.**

31.     On July 20, 2021, Plaintiff supplied Defendant with Missouri and Oklahoma authority holding Defendant's position it could offset comp payments in its UM evaluation was incorrect. **Exhibit "9," 7/20/21 correspondence.**

32.     On August 4, 2021, Plaintiff again inquired if Defendant had changed its position regarding offsetting comp payments. **Exhibit "10," 8/4/21 correspondence**.

33.     On August 6, 2021, Defendant's attorney, McAlester, sent Plaintiff's counsel a letter advising he was responding to the July correspondence and provided excuses for Defendant's conduct. He also advised that Defendant was "currently in the process of collecting medical records," but never answered the question whether Defendant was still taking the position that it could offset comp benefits and did not state that the carrier was

denying Plaintiff's UM claim. **Exhibit "11," 8/6/21 McAlester correspondence**.

34.     On September 22, 2021, Plaintiff's counsel sent another letter to McAlester, with a copy to the adjuster, requesting an evaluation of his UM claim. **Exhibit "12," 9/22/21 correspondence.**

35.     The vehicle was garaged and maintained in Oklahoma for at least two years (for at least the entire time during the Oklahoma State Capital job), before the accident,[2] and probably at least three years. **Exhibit "1," Affidavit of Brandon Wichert.**

22.     Prior to the filing of Plaintiff's complaint Defendant never advised Plaintiff he was not entitled to UM benefits. **Exhibit "13," Bisher Affidavit.**

## ARGUMENT AND AUTHORITY

## PROPOSITION I: SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[3] The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[2] In the complaint Plaintiff alleged that "approximately three years" before the accident the vehicle was garaged and maintained in Oklahoma. This is based on his understanding that was the situation when the employee named Jimmy started working in 2017. Discovery is required on this point.

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)*; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)*; Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993).

and on which that party will bear the burden of proof at trial.[4] Defendant's motion fails to meet the required standard for summary adjudication.

## PROPOSITION II: THIS COURT MUST FIRST DETERMINE THE APPLICABLE CHOICE OF LAWS RULE

The rule is clear: in a diversity of citizenship case, this Court must apply the law applicable in the state in which the Federal Court sits.[5] This Court's next task is to determine the correct choice of law rule Oklahoma would apply.

## PROPOSITION III: OKLAHOMA WILL APPLY OKLAHOMA LAW TO THIS COMBINED BAD FAITH AND CONTRACT ACTION AS THE STATE HAVING THE MOST SIGNIFICANT RELATIONSHIP WITH THE PARTIES AND THE TRANSACTION

The case before this Court is a UM and a resulting bad faith case involving the question whether Oklahoma should apply the choice of law rule applicable to the contract action (the UM claim) or the bad faith claim. Fortunately, there is a recent Oklahoma Supreme Court case telling us what the Oklahoma law is about our choice of law issue.

*Martin v. Gray*,[6] involved the same issues as our case. As here, this was a UM coverage issue and bad faith case. As in our case, the insurance company said there would be no coverage under Kansas law, where the policy was issued. The insurance company contended the circumstance required that the case be decided by the law of the place where the policy was issued (Kansas). The insurance company urged Kansas law be applied.

---

[4] *Celotex*, 477 U.S. at 317.
[5] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 101-285 L.Ed. 1477 (1941); *Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783, 785 (10th Cir. 1984).
[6] 2016 OK 114, ¶9, 385 P.3d 64, 67.

There, as here, the insurance company moved to dismiss the case on this basis. The State District Court agreed and dismissed the case. The Oklahoma Supreme Court reversed, holding the applicable choice of laws rule should be the law of the state which had the most significant relationship to the transaction, following *Brickner v. Gooden*.[7] The Oklahoma Supreme Court held that under our circumstance, Oklahoma law would apply.

The Oklahoma Supreme Court's analysis in reaching that conclusion reveals a striking similarity between that case and this one: The Oklahoma Court found significant that the contacts involving the underlying claim took place between the insured (through plaintiff's attorney) both in Oklahoma and defendant's adjuster in Pennsylvania. Then the Oklahoma Supreme Court concluded that circumstance dictated that Oklahoma had a greater relationship to the transaction than did Pennsylvania.

Contrast that with the negotiations in the present case where no party to the lawsuit (Plaintiff, the Oklahoma insured, and Defendant, incorporated in New Hampshire and with its principal place of business in Massachusetts, and an Ohio insurance company) has any connection to Missouri. The negotiations (or lack thereof) and assertion of reimbursement rights were by Plaintiff, Plaintiff's counsel, the comp carrier's lawyer, all in Oklahoma, and Defendant's adjuster in California.

Nobody asks to apply the law of Tennessee, Massachusetts, California, New Hampshire, or Ohio. Our case is a stronger case for applying Oklahoma law than was *Martin v. Gray*.

---

[7] 1974 OK 91, ¶22, 525 P.2d 632, 638.

*Holley v. Ace American Ins. Co.*[8] gives additional insight into the Oklahoma Supreme Court's handling of work comp subrogation which is at the heart of this case. There, a rig hand hired in Oklahoma was killed in an accident in Texas. His widow sought work comp benefits in Oklahoma but also filed a successful wrongful death action in Texas.

Oklahoma law forbids workers' comp subrogation against a wrongful death claim. Texas law permits the subrogation. The widow filed a declatory action against the comp carrier for a declaration that the Oklahoma rule should be applied. The State District Court granted the Declaratory Judgment, but the Court of Civil Appeals reversed. The Oklahoma Supreme Court reversed the Court of Civil Appeals and affirmed the District Court, saying:

> . . . the protection of death benefits from subrogation, like the exemption of benefits from creditors' claims provided by 85 O.S. Supp. 2005, § 48, is a general public policy protection provided by Oklahoma's Workers' Compensation Act. Any doubt about the application of such protections should be resolved in favor of the protection.

The Oklahoma Supreme Court's rule about not discriminating against workers is a long-standing one. *Chambers v. Walker,*[9] said about the relationship of UM and Workers' Compensation:

> . . . The uninsured motorist legislation was passed long after adoption of the Workmen's Compensation Act. When we consider the basic purposes of the latter act, our belief that the legislature did not intend that the Uninsured Motorist Act be the means of discrimination against working people protected under the workmen's compensation laws is strengthened. . .. The right claimed by [the UM carrier] would simply provide it with a windfall in the case of one covered by the workmen's compensation laws. The purpose of the Uninsured Motorist Act is to protect the insured, not the insurer.

---

[8] 2013 OK 88, ¶13, 313 P.3d 917, 921.
[9] 1982 OK 128, ¶7, 653 P.2d 931, 934.

**PROPOSITION IV: A SHARPLY DISPUTED FACT ISSUE WHETHER THE INSURED VEHICLE WAS PRINCIPLY GARAGED IN OKLAHOMA OR MISSOURI PRECLUDES SUMMARY JUDGMENT**

Defendant's UM policy provides that the word "auto" [Doc. No. 24-1 pg. 85], defines "Auto" as a vehicle: where it is "licensed or principally garaged." It is thus vital to determine where the vehicle was principally garaged. By moving to prevent discovery of that very fact, Defendant has rendered inoperable its ability to successfully move for Summary Judgment. FRCP56(d) provides:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reason, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

What Defendant may <u>not</u> do is simultaneously refuse to permit discovery as to this vital fact and use that as a basis for summary judgment. Plaintiff knows that the vehicle had been principally garaged in Oklahoma for at least two years at the time of the wreck but believes that with proper discovery, it can be shown to have been principally garaged in Oklahoma for at least three years. He should be permitted to show that.

Nevertheless, insurance carriers like the Defendant regularly conduct audits of property that it insures for purposes of modifying coverage and making premium adjustments. Thus, Defendant would have been aware based on an audit conducted during the time the vehicle was garaged in Oklahoma, that it was indeed garaged and maintained in this state. Defendant also should have been aware from communications with the

Plaintiff's employer and Defendant's agent that the vehicle was being used by employees that were Oklahoma residents and would have needed to be registered and tagged in Oklahoma since the vehicle was being garaged and used in Oklahoma. Defendant also knew, or should have known, that both Mr. Thompson and Plaintiff were Oklahoma residents, hired in Oklahoma, and were paid wages in Oklahoma at the time of accident. Also, Defendant was surely aware that "every insurer knows the automobile is a movable item which will be driven from state to state." *Allstate Insurance Company v. Hague*,[10] *Bohannan v. Allstate Ins. Co.*[11]

**PROPOSITION V: SHOULD THE COURT HAVE ANY DOUBT AS TO THE MEANING OF *MARTIN V. GRAY*, THE COURT SHOULD CERTIFY THE QUESTION TO THE OKLAHOMA SUPREME COURT AND SHOULD URGE THAT COURT TO RECONSIDER THE EARLIER DECISIONS OF THE TENTH CIRCUIT AND THE OKLAHOMA SUPREME COURT THAT 15 O.S. § 162 REQUIRES A MOTOR VEHICLE POLICY BE INTERPRETED BY THE LAW OF THE PLACE WHERE THE POLICY IS TO BE PERFORMED**

If the Court is persuaded *Martin v. Gray*[12] is controlling, the Court should simply overrule the Motion for Summary Judgment and find Oklahoma law applies. If the Court is not so persuaded, it should certify a question to the Oklahoma Supreme Court, in effect asking, "did you really mean what you said in *Martin v. Gray*?"[13] If the Court decides to do that the Court should add a separate certified question: "Did the Tenth Circuit and later this Court err in its interpretation of 15 O.S. § 162?" The problem arises this way.

---

[10] 289 N.W.2d 43, 50 (Minn.1978).
[11] 1991 OK 64, ¶25, 820 P.2d 787, 795.
[12] *Supra* at fn 6.
[13] *Id*.

Courts deciding choice-of-law issues are bound by the legislature's direction. The Restatement says:

§ 6. Choice-Of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.[14]

The Legislature gives us a directive for interpreting contracts in 15 O.S. § 162:

**A contract is to be interpreted according to the law and usage of the place where it is to be performed,** or, if it does not indicate a place of performance, according to the law and usage of the place where it is made. (Emphasis added)

The Tenth Circuit held in *Rhody v. State Farm*[15] that 15 O.S. § 162 did not prescribe a place of performance so that it adopted a rule that the place of issuance of a policy was, by default, the jurisdiction by which the policy is to be interpreted. This may work for policies covering specific, fixed property but it should not be applied to motor vehicle policies which are by their very design mobile.

The Oklahoma Supreme Court followed *Rhody*[16] in *Bohannan v. Allstate Ins. Co.*[17] and *Bernal v. Charter County Mut. Ins. Co.*[18] The vehicle policies (including the present one) apply by their terms to "accidents and losses which occur within the policy territory," which the policies define as "(1) The United States of America, its territories or

---

[14] Restatement (Second) of Conflict of Laws § 6 (1971).
[15] 771 F.2d 1416, 1420 (10th Cir. 1985).
[16] *Id.*
[17] 1991 OK 64, ¶17, 820 P.2d 787, 793.
[18] 2009 OK 28, ¶ 18, 209 P.3d 309, 317.

possessions. . . ."[19] Thus, the policy is to be "performed," in 15 O.S. § 162 terms, wherever "accidents or losses occur" as long as that is within the United States. Or the Supreme Court might conclude that the "place of performance" would more logically be the place where the vehicle was principally garaged. That needs to be a choice of the State Supreme Court. Despite 15 O.S. § 162, *Bohannan* does not address the above policy provision and the "place of performance," but instead jumps to the "backup" rule of 15 O.S. § 162 by applying the law of the place "where the contract is made":

> . . . we adopt the following choice of laws rule to be applied in motor vehicle insurance cases involving conflicting state laws: The validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, . . .[20]

Where, as here, the contract provides a place of performance, the statutory directive of § 162 does not permit judicial adoption of this modified *lex locus contractus* rule. In fairness to the *Bohannon* court, the issue of the policy providing a place of performance was not before that Court. *Bohannan* says, "Plaintiff's California insurance contract is not a part of the record transmitted to this Court."[21] Similarly, *Bernal*[22] did not consider the policy provision because it did not think the issue had been adequately raised in the trial court.[23] It is raised here.

---

[19] Policy, [Doc No. 24-1].
[20] *Bohannon v. Allstate Ins. Co.*, 1991 OK 64, ¶ 30, 820 P.2d 787, 797.
[21] *Id.* at ¶7, 789.
[22] *Bernal v. Charter County Mut. Ins. Co.*, 2009 OK 28, 209 P.3d 309.
[23]*Id.* at 318 fn. 18.

All courts with a statute like § 162 follow the interpretation advocated here, except one. The statute comes from the Field Codes, intended to replace procedure rules in New York with statutory rules.[24] But, five states, Oklahoma, California, Montana, North and South Dakota adopted the Field Code, including § 162.[25]

*Kemp v. Allstate Ins. Co.*[26] adopts the rationale articulated above. Montana's Field Code statute was identical to Oklahoma's 15 O.S. § 162.[27] A car wreck in Montana potentially implicated vehicle policies issued in Vermont and New York. (The driver of the car had a policy issued in Vermont while the owner of the car she was driving had a policy issued in New York, both with Allstate.) Montana law would stack the UM coverage while New York and Vermont law would not. The Montana Court stacked, based on the statute identical to our statute and a policy provision virtually identical to ours.[28]

*Kemp* does contain a misstatement. It suggests that some states have held contrary to its ruling. It cites five cases from four states;[29] none involves a statute like § 162.

_____

[24] Robert C. Lukes, *Conflict of Laws: The Recent History of Montana's Rules for Contracts*, 56 Mont. L. Rev. 553, 557 (1995).

[25] Joseph M. Cormack, *Conflict of Laws in Regard to Contracts in Field Code States Other Than California*, *12* S.Cal. L. Rev. 362 (1939).

[26] *Kemp v. Allstate Ins. Co.*, 183 Mont. 526, 533, 601 P.2d 20, 24.

[27] Section 28-3-102 MCA, quoted at *Kemp*, 183 Mont. 526, 531, 601 P.2d 20, 23.

[28] The Montana Court quotes only the New York policy: "This coverage applies only to accidents which occur on and after the effective date hereof, during the policy period, and outside the State of New York but within the United States of America, its territories or possessions, or Canada." *Kemp, Id.* at 531, 601 P.2d 20, 23.

[29] *Davis v. State Farm Mut. Auto Ins. Co.* (1973), 264 Or. 547, 507 P.2d 9; *Aetna Casualty and Surety Company v. Enright* (Fla.App.1972), 258 So.2d 472; *Breen v. Aetna Casualty and Surety Company* (1966), 153 Conn. 633, 220 A.2d 254; *Eagle Star Ins. Co. v. Parker* (Fla.App.1978), 365 So.2d 780; and *Gov't Emps. Ins. Co. v. Sheerin* (N.Y.1978), 65 A.D.2d 10, 410 N.Y.S.2d 641, all cited at 601 P.2d 20, 24.

A close analysis of the relatively few cases which involve a statute like § 162, reveals virtual unanimity in ruling as Plaintiff urges here. *Shippers Development Co.* v. *General Ins. Co. of America*[30] applied California law to a vehicle policy issued in Washington but involving an accident in California. A driver of the insured truck was hurt in a fall off the loading dock at which the truck was to be loaded. An exclusion for injury to an employee of the insured would preclude coverage under the vehicle policy for the loading dock owner if Washington law applied but not if California law applied. The California Court found coverage by applying California law as the place where the injury occurred.

In fact, there is only one case to the contrary under a statute like § 162 where a vehicle policy applies the policy to accidents in a geographically defined area. That case is the Tenth Circuit case purporting to predict Oklahoma law, *Rhody v. State Farm Mut. Ins. Co.*[31] There, the Rhody family's son took a Texas insured car to Oklahoma where he was working. He was killed in Oklahoma by an uninsured motorist. If Oklahoma law applied, the Rhodys could stack the coverage. If Texas law applied, they could not.

The Court of Appeals, following the now reversed rule that the Court of Appeals should defer to a decision of a federal judge sitting in the state whose law is in question,[32]

---

[30] *Shippers Development Co. v. General Ins. Co. of America*, 274 Cal.App.2d 661, 674, 79 Cal.Rptr. 388, 396 (1969) (WestLaw's Keycite system shows this case with a red flag, indicating it is overruled. The cases cited in WestLaw do not support this treatment of the case.)

[31] *Rhody v. State Farm Mut. Ins. Co.*, 771 F.2d 1416 (10th Cir. 1985).

[32] *Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

rejected the rule of *Kemp* and *Shippers*. The Court instead held that policy language providing where the policy would apply did not specify a place of performance so as to trigger § 162. We do not find in *Rhody* the policy language specifying place of performance. Rather, the Court simply characterizes it as providing ". . . uninsured motorist coverage for an accident occurring anywhere in the United States and Canada . . ."[33]

Plaintiff submits that if the *Rhody* Court was interpreting a policy provision like ours, it was simply wrong and that the *Kemp* and *Shippers* cases reflect what should be Oklahoma law. The Oklahoma Courts are bound by law to follow the direction of the legislature and are not free to roam so far from the dictates of the legislature.

Other states having statutes like § 162 have struggled with the problem of making § 162 comport with the preferred modern rules of the Second Restatement of Conflicts. As we have seen, California[34] and Montana[35] have adopted Plaintiff's proposed position that, under such a statute, a motor vehicle policy is to be performed where the vehicle is involved in an accident, so the law of that state applies. This leaves North and South Dakota. South Dakota adopts Plaintiff's proposed rule, albeit in an analogous case, not involving insurance. In *Anderson v. Taurus Financial Corp.*,[36] a case involving questions of usury and false advertising, the trial court applied the Second Restatement's "most significant contacts" test to determine which state's law applied. The South Dakota Supreme Court

---

[33] *Rhody, supra* at 1419.
[34] *Shippers Dev. Co. v. Gen. Ins. Co. of Am.*, 274 Cal.App.2d 661, 79 Cal.Rptr. 388, (1969).
[35] *Kemp v. Allstate Ins. Co.*, 183 Mont. 526, 601 P.2d 20.
[36] *Anderson v. Taurus Fin. Corp.*, 268 N.W.2d 486 (S.D. 1978).

reversed, noting that it was error for the trial court to follow this test in the face of the statute identical to § 162. Rather, the South Dakota Supreme Court said, the trial court should have applied the law of California because payments on the contract were to be made in California and that was the place of performance.

North Dakota's handling of a similar issue is even more instructive to this Court's problem. In *First Nat. Bank of Wibaux v. Dreher*[37] the North Dakota Supreme Court was confronted with a suit on a note made in North Dakota but payable in Montana. The interest charges on the note would be usurious and illegal under North Dakota law. However, under the law of Montana, where the note was payable, the interest rate would not be usurious.

The North Dakota Supreme Court made clear in its opinion that it believed the more modern rules of the Second Conflicts Restatement were preferable but held the Court was bound by the statutory provision of the North Dakota equivalent of § 162.[38] It upheld validity of the note.

The next session of the North Dakota Legislature noted the North Dakota Supreme Court's holding and repealed the North Dakota equivalent of § 162. This freed the North Dakota courts to adopt the Restatement Second analysis which it found preferable.[39]

---

[37] *First Nat. Bank of Wibaux v. Dreher*, 202 N.W.2d 670 (N.D. 1972). (Superseded by repeal of statutory basis.)

[38] N.D. Cent. Code § 9-07-11; *First Nat. Bank of Wibaux v. Dreher*, 202 N.W.2d 670, 672 (N.D. 1972).

[39] This history is reported in *Apollo Sprinkler Co. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386, 389 (Fn. 2) (N.D. 1986).

So, it should be with § 162. The Supreme Court should follow the law and, if the legislature perceives a change in the law is preferable, the legislature may change § 162. If the insurance companies do not like the result of the present statutory scheme, they can change the result of this ruling by placing in the policy a choice of law clause to say the policy shall be construed in accordance with the law of the state where it is issued. The Court could make the ruling in this case prospective only, except as to this case, to give insurance companies time to make such changes. See, for example, *Hartline v. Hartline.*[40]

This should meet the objection often raised by insurance companies (but almost never proven) that insurance companies are surprised when insurance policies give rise to claims in other states applying other states' laws and, therefore, cannot set rates appropriately.

If the legislature believes the courts should be free to adopt a more flexible and modern choice of law rule, it can repeal § 162. This Court can ill afford to strike out on a course quite different than that prescribed by the statute in times when courts are criticized for usurping the power of the legislature.

---

[40] 2001 OK 15, ¶ 21, 39 P.3d 765, 773.

## CONCLUSION

In *Lane v. Progressive N. Ins. Co.*,[41] The Oklahoma Supreme Court recently said:

> This Court's jurisprudence is clear about what that public policy is: 'The purpose of Oklahoma's statutory scheme is to "assure each [UM insured] person the full contracted coverage" for which a premium has been paid.'

Far from being entitled to summary judgment, Defendant should ultimately be held liable for its bad faith and UM coverage.

Respectfully submitted,

s/Rex Travis

| | |
|---|---|
| Rick W. Bisher, OBA #12215 | Rex Travis, OBA #9081 |
| Ryan Bisher Ryan & Simons | Travis Law Office |
| 4323 N.W. 63rd St., Suite 110 | 12220 N. MacArthur Blvd., Suite F #220 |
| Oklahoma City, OK 73116 | Oklahoma City, OK 73162-1851 |
| rbisher@rbrlawfirm.com | info@travislawoffice.com |
| Telephone: 405-528-4567 | Telephone: (405) 236-5400 |
| Facsimile: 405-525-2123 | Facsimile: (405) 236-5499 |
| ***Attorneys for Plaintiff*** | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing and transmittal of Notice of Electronic Filing to the following:

William W. O'Connor
Margo E. Shipley
*Attorneys for Defendant*

s/Rex Travis

---

[41] 2021 OK 40, ¶ 15, 494 P.3d 345, 351.